Carondelet Canal and Navigation Company vs. Parker.

No. 6668.

CARONDELET CANAL AND NAVIGATION COMPANY VS. NARCISSE PARKER, MASTER AND OWNER OF SCHOONER VICTORIA NO. 2.

The State may incorporate a company to convert an unnavigable, into a navigable stream of water, and, under the express or implied consent of Congress, may authorize the corporation to assess a charge for the use of the stream, on all vessels which shall thereafter navigate it. And such a charge is not a toll, or duty, forbidden by the constitution of the United States, but is a compensation for labors actually performed by the corporation, and availed of by said vessels.

The consent of Congress, by which the State is authorized to empower one corporation to assess a toll for performing certain services, will, unless expressly withdrawn by Congress, inure to the benefit of any subsequent corporation chartered by the State to perform and which does perform said services.

APPEAL from the Fourth Justice of the Peace, parish of Orleans. Hernandez, J.

· C. E. Schmidt and H. D. Ogden, for plaintiffs and appellants.

· Louque & Fernandez, for defendant.

The opinion of the court was delivered by

DeBLANC, J. Plaintiff claims from defendant two dollars and twenty-five cents for toll upon the admeasured tonnage of schooner Victoria No. 2, for a pass granted to said schooner out of Bayou St. John.

The defendant denies the right of plaintiffs to recover, for this:

First—That the Bayou St. John is a natural navigable stream empty-ing into Lake Pontchartrain and connected with the Gulf of Mexico, and is public property, free to the use of all citizens of this and other States of the Union, who have a natural right to navigate said stream with their vessels and to moor the same to the banks thereof.

· Second—That by the act of Congress admitting Louisiana as a State into the Union, it was made an express proviso and condition that the river Mississippi and the navigable rivers and waters leading into the same and into the Gulf of Mexico, should be forever common highways free to the inhabitants of all the States and Territories of the United States without tolls or duties therefor imposed by said State. And that by section 5251 of the Revised Statutes of the United States all naviga-ble rivers and waters in the former Territories of Orleans and Louisiana are made forever public highways.

Third—That the charge sought to be collected is a duty on tonnage imposed · by the State of Louisiana without the consent of Congress, and is within the prohibition contained in so much of section ten, article one, United States constitution, as provides that "no State shall, with-out the consent of Congress, lay any duty on tonnage."

From the decree of the lower court rejecting the demand plaintiff has appealed.

Carondelet Canal and Navigation Company vs. Parker.

In the pleadings and the printed arguments two principal questions are presented:

First—Was Bayou St. John a navigable stream before it was improved by plaintiff and those to whom the plaintiff has succeeded?

Second—If it was navigable, has Congress authorized the collection of toll to pass in and out of it?

Bayou St. John empties into Lake Pontchartrain. In the latter part of the eighteenth and the commencement of the nineteenth century there was a sand-bar at the mouth of the bayou, and, at times, the water was so low on the bar that even a canoe had to be dragged over it. At that date the bayou was not, as it is now, linked by a canal to the city of New Orleans. It thus remained a useless artery between the lake and the city, until the Baron de Carondelet ordered the opening of the canal to which his name was given.

The *projet* of the Spanish Governor was but partly executed under his administration, and when Louisiana became an American Territory it was only with the smallest barks that any one could venture on the few inches of water which had been drawn from the bayou into the inconsiderable canal dug by the baron's order. Except at long intervals and exceptional periods the entrance from the lake into the bayou, from the bayou into the canal, was then impassable for such schooners as that of defendant.

In order to complete the work begun under De Carondelet the Territorial Council, in 1805, granted a charter to the Orleans Navigation Company, empowering that company to improve Bayou St. John, and, under specified conditions, to claim and collect toll from the boats and vessels entering said bayou.

In 1821 the Legislature passed a resolution requiring the Attorney General to issue out of the First District Court a *scire facias*, to ascertain the constitutional validity of said company's charter, and whether, if constitutional, that charter had not been violated by the company.

In obedience to that resolution a suit was filed in the name of the State against the Orleans Navigation Company; the trial of that memorable suit was marked by a display of knowledge and talent which would have enlisted the attention of the ablest jurists of any age or State. The constitutionality of the charter was vindicated and acknowledged. 11 M. 309.

· In the report of that case we have found a plain recital of the obstacles which the company had to remove, and from the many pages of that recital we quote at random:

"Until the company had displaced the obstructions at the mouth of Bayou St. John, vessels frequently, when loaded with pitch, tar, and cattle, were obliged to throw their cargoes overboard. * * The inhabit-

ants of the other side of the lake were some times a month at home waiting for a rise on the bar. * * These flatboats, drawing from twelve to fourteen inches, were for days aground. * * A number of barges were kept expressly for unloading vessels to enable them to cross the bar. * * The expense for unloading a vessel of twenty tons was thirty dollars, and the cargo was often damaged. * * Those who before the improvement transported goods or produce would willingly have paid double the duties exacted by the company for the advantages derived from those improvements. * * In 1796 there were two or three schooners in the basin of the canal, and it was so filled up that they remained there two or three years before they could get out. * * The navigation had then entirely ceased except in extraordinary high water. * * The toll claimed by plaintiff is less than such vessels had to pay to unload their freight. * * The repairs of the damage done by a crevasse cost the company twenty-three thousand dollars; by a storm twenty-five thousand dollars."

In that case as in this it was urged that the toll authorized by defendant's charter had not been laid with the consent of Congress. To that objection this court answered that in such matters the constitution of the United States does not require an express consent from Congress, and an implied one was to be inferred from the repeated acts of that body adding to the means provided by the Territorial Legislature for the completion of the intended improvements.

That all the navigable rivers in the State are public highways is not disputed. Nor can it be disputed that such highways are free to the citizens of the United States without any impost tax or duty therefor; but in the sense of the congressional statute, when and under what circumstances is a river to be considered as navigable? Is it navigable though closed at its mouth and closed at its source; though full of stumps and logs? Is it navigable when, to cross its ten or twelve sandbars, the cargo of a vessel has to be thrown overboard; when these bars impede the course of even the hunter's canoe? Is it navigable whenever, at some point, it contains a sufficient quantity of stagnant water to float any bark, though, as a prisoner in a dungeon, that bark can only move from a restricted center to an impassable obstruction, beyond and back of which there are other and as impassable obstructions?

" Une rivière est navigable," said Marcadé, " quand elle peut porter des bâtiments; elle est flottable, dans le sens de notre article, quand elle peut porter des trains ou radeaux; les rivières flottables à bouches perdues ne font partie du domaine public. Une meme rivière peut être navigable dans une partie, flottable avec radeaux dans une autre, et non flottable dans la partie supérieure de son cours." Marcadé, vol. 2, pp. 381, 538.

Carondelet Canal and Navigation Company vs. Parker.

The congressional enactments we are told stipulate, not merely for the freedom of navigation, but also for an exemption from any impost, tax, or duty. As remarked by Mr. Justice Martin, the organ of the court in the case already alluded to, those words, tax, impost, and duty, "must be confined to the idea which they commonly present to the mind, exactions to fill the public coffers, for the payment of the public debt and the formation of the general welfare of the country, not to a contribution to pay the expenses of building bridges, erecting causeways, or removing obstructions in a water-course, which are to be paid by the individuals who enjoy the advantages resulting from such labor." 11 M. 309.

No State is prohibited by either a clause of the Federal constitution or a congressional statute from improving the navigation of the rivers which flow within its limits; and, as decided by the highest court of the republic, the imposition of a reasonable toll for the use of an improvement of the navigation is not a violation of the ordinance of 1787, which provides:

"The navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways, and forever free as well to the inhabitants of said territory as to the citizens of the United States and those of any other State that may be admitted into the confederacy, without any tax, impost, or duty therefor." 3 McL. 226; 6 McL. 237.

In 1852 this court decided that the Orleans Navigation Company had forfeited its charter, and declared it dissolved and extinct. 7 An. 679.

In 1857, on the sixteenth of March, the corporation prosecuting this suit was created by an act of the Legislature of this State. The powers under which the toll sued for is claimed are conferred by section ten of that act, which reads as follows:

"Be it further enacted, etc., That this corporation may and shall take, possess, hold, and enjoy all and singular the rights, privileges, franchises, immunities, power, and authority which were at any time granted to, received, possessed, enjoyed, and exercised by the late Orleans Navigation Company, under sections nine, ten, eleven, twelve, and thirteen of an act entitled 'an act for improving the internal navigation of the Territory of Orleans,' approved July 3, 1805, as well as those copied at this time by the said New Orleans Canal and Navigation Company, by act approved March 12, 1852," etc.

Defendant contends that, "assuming the first company was authorized by Congress, it does not follow that in 1857 the Legislature had the sanction of that body to create a new corporation and confer upon it the privileges allowed to its predecessor by the original charter." The consent of Congress was given less to the company than to the State

28

and the enterprise, and to whomsoever and whatever given, that consent never was withdrawn. The State acted under it and granted charters; under it rights were acquired, which neither Congress nor the State could divest. Of that great enterprise the administration alone was confided to the Orleans Navigation Company; that administration and the privileges thereto attached that company has forfeited and lost; but the dissolution of the corporation did not affect, condemn, and destroy the enterprise, and the thrice-expressed congressional sanction protects and guards the charter of 1857.

As on the trial of 1822, the evidence in this case shows, far beyond the reach of any rational doubt, that, for public purposes, as one of the highways of intercourse between States, as a commercial avenue, Bayou St. John was not navigable, and that it was rendered navigable by the efforts and with the funds of plaintiff and its predecessor. Toward the lake it had a natural gate, but it was nearly closed; that gate was opened and kept open by those companies. Toward the city they have widened and kept unobstructed a communication which before was choked with obstructions, and as shallow as insignificant. What they have not actually created they have permanently improved.

Were it not for the works of the plaintiff, for the hundreds of thousands of dollars spent by it and its predecessor, were it not for its daily expenditures, its vigilance, its dredgeboats, its incessant care, were it not for the channel of two thousand feet dug at the cost of those companies from the bank of the lake to the light-house, the smallest barks would have to fold their sails at the mouth of Bayou St. John, and there, as in an antechamber, wait for the irregular rise of the waters of the lake.

Plaintiff has fairly complied with every obligation of its charter. It has enlarged, deepened, straightened, and cleaned the bayou; it has to constantly struggle against the damaging effects of the winds and waves on the embankments and the channel built and dug in the lake. It has aided and increased, to an incalculable extent, the movement of navigation on and through said lake and bayou; it has lessened the expenses and perils of that navigation; it has created an additional harbor, and is now claiming, not an impost, not a tax, not a duty, but a reasonable compensation for a real service, for a service already rendered and which the company continues to render.

The State in granting a charter to plaintiff, and plaintiff in the exercise of its privileges under the charter, have violated no constitution, State or Federal, invaded no highway, interfered with no right, private or public; but, on the contrary, the State by her law, the company by its efforts, have opened to the vessels of every nation another, a safe, an important route, and those who take that route are bound, in law and in

equity, to pay for the use of improvements which are the result of not less than seventy-two years of an active, costly, and intelligent labor.

To the protection of that invaluable and honest enterprise the faith of the republic and the faith of the State are pledged.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be and it is hereby annulled, avoided, and reversed, and, proceeding to render such judgment as should have been rendered in and by said court—

It is further ordered, adjudged, and decreed that the Carondelet Canal and Navigation Company do have judgment against and recover of Narcisse Parker, master and owner of the schooner Victoria No. 2, the sum of two dollars and twenty-five cents with the costs of appeal and of the lower court.

*This case was decided at Opelousas by consent of litigants.